IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

CANADIAN TROPHY QUEST, LTD.                                              PLAINTIFF

V.                              Case No. 07-CV-4099

CABELA'S INCORPORATED and
CABELA'S OUTDOOR ADVENTURES, INCORPORATED                                DEFENDANTS

## MEMORANDUM OPINION

Before the Court is a Motion to Dismiss for Lack of Personal Jurisdiction filed by Separate Defendant Cabela's Outdoor Adventures ("COA"). (Doc. 21). COA argues that it does not have sufficient minimum contacts with the state of Arkansas to warrant personal jurisdiction and that the Court's exercise of personal jurisdiction would offend the traditional notions of fair play and substantial justice under the Due Process Clause of the Fifth And Fourteenth Amendments. Plaintiff Canadian Trophy Quest, Ltd. ("CTQ") has responded. (Doc. 30). COA has filed a reply to CTQ's response. (Doc. 40). The Court finds the matter ripe for consideration.

## BACKGROUND

This case arises out of an alleged breach of a 2007 contract between CTQ and COA in which COA agreed to compensate CTQ for the exclusive right to book fifty-five deer hunting excursions with CTQ. On October 25, 2007, CTQ filed its original complaint against Cabela's Incorporated ("Cabela's"), alleging breach of contract, interference with business expectancy, and fraud. CTQ then amended its complaint (Doc. 17) in January 2008, to include COA as a defendant. On February 19, 2008, COA filed its Motion to Dismiss for Lack of Personal Jurisdiction. (Doc. 21).

CTQ is a traditional hunting outfitter that contracts with private parties to conduct white tail buck hunting excursions. COA, a Nebraska corporation, is a subsidiary of Cabela's Incorporated. COA, among other things, provides a booking service through which prospective

hunters can book hunting excursions all over the world. Information regarding COA is located on Cabela's general Web site and can be found by clicking the COA link located on Cabela's home page.[1] COA's Web page contains an overview of highlighted trips and provides links to information about COA, including COA's phone number and email address, information regarding the procedure for booking a trip, conditions for the trips, and a disclaimer about liability.

To book a trip with COA, the customer must call COA, located in Sidney, Nebraska, for availability. COA will then reserve a space, and the customer must send his or her deposit within one week. Once the deposit is received, COA mails a complete information package to the customer along with an invoice. After the trip, COA mails the customer a survey inquiring about the trip experience and asking if the customer would like to book another trip with COA. If a customer says "yes," then a COA employee contacts the customer. In 2006, eleven of the fifty-four hunters who booked CTQ hunting trips through COA were from Arkansas.

COA conducts some advertising in Arkansas. COA has five publications. Four of the publications deal with hunting and fishing excursions while the fifth publication is a subsidiary of COA that deals with the sale of hunting properties. In 2007, COA and one or more of its divisions sent approximately 1864 catalogs to Arkansas. In 2006, the number of catalogs sent was 2192. COA also has general advertisements in the pages of some catalogs distributed by Cabela's. COA does not disclose the number of catalogs that Cabela's sent to Arkansas in 2006 and 2007; however, COA states that Cabela's mailed 1.73% of its catalogs to Arkansas during these two years.[2] There are no Cabela's retail stores located in Arkansas. The Court will now

---

[1] www.cabelas.com

[2] This percentage, however, is irrelevant to a minimum contacts discussion. When deciding whether the Court has personal jurisdiction over a defendant, the relevant inquiry is not whether the percentage of a company's contacts is substantial for the company. Rather, the inquiry should focus on whether the company's contacts are substantial for the forum. *Lakin v. Prudential Services, Inc.*, 348 F.3d 704, 709 (8th Cir. 2003).

analyze COA's contact with Arkansas to decide whether the Court can properly exercise personal jurisdiction over COA.

## DISCUSSION

In a diversity action, the Court may assume jurisdiction over non-resident defendants only to the extent permitted by the long-arm statute of Arkansas and by the Due Process Clause of the Fourteenth Amendment. *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1073 (8th Cir. 2004) (citing *Morris v. Barkbuster*, *Inc.*, 923 F.2d 1277 (8th Cir. 1991)). The long-arm statute of Arkansas confers jurisdiction to the fullest constitutional extent; thus, the Court's inquiry is limited to whether the exercise of personal jurisdiction comports with due process. Ark. Code Ann. § 16-4-101(B) (Repl. 1999)*; Dever*, 380 F.3d at 1073.

"Due process requires minimum contacts between a non-resident defendant and the forum state such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Dever*, 380 F.3d at 1073. There are two theories for evaluating minimum contacts: general jurisdiction and specific jurisdiction. *Id*. Under the general jurisdiction theory, the Court may hear this lawsuit against COA if it has "continuous and systematic" contacts with Arkansas, even if the injuries at issue in this lawsuit did not arise out of COA's activities directed at Arkansas. *See id*. In contrast, specific jurisdiction is viable when the cause of action at issue arose out of or is related to a defendant's activities within a state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174 (1985).

Both theories of personal jurisdiction require some act by which COA purposely availed itself of the privilege of conducting activities within Arkansas, thus invoking the benefits and protections of its laws. *See Dever*, 380 F.3d at 1073 (citing *Hanson v. Denckla*, 357 U.S. 235 (1958)). If the Court determines that COA has minimum contacts with Arkansas, it then may consider "whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *See id.* (quoting *Burger King Corp.*, 471 U.S. at 476 (1985)).

The Eighth Circuit has instructed courts to consider the following factors when resolving a personal jurisdiction inquiry, with significant weight given to the first three factors: (1) the nature and quality of a defendant's contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. *Dever*, 380 F.3d at 1073–74. The third factor is considered only in a specific jurisdiction analysis. *See Miller v. Nippon Carbon Co., Ltd.*, 528 F.3d 1087, 1091 (8th Cir. 2008). Moreover, the fourth and fifth factors relate to the Court's consideration of "traditional notions of fair play and substantial justice" in the due process analysis. *See Lakin v. Prudential Services, Inc.*, 348 F.3d 704, 712 (8th Cir. 2003).

### A. Specific Jurisdiction

The question here in determining whether the Court may exercise personal jurisdiction over COA under a specific jurisdiction analysis is whether COA transacts any business in Arkansas and whether CTQ's claim arises from those transactions. *See Burger King*, 471 U.S. at 472. It is undisputed that CTQ's claims against COA do not "arise from" COA's transactions within Arkansas. Thus, this is not a case of specific jurisdiction.

### B. General Jurisdiction

The first part of a general jurisdiction analysis is to determine whether COA has "continuous and systematic" contacts with the State of Arkansas. *See Dever*, 380 F.3d at 1073. Here, there is evidence that COA has contacts with Arkansas. The question is whether these contacts are sufficiently continuous and systematic to support a finding of general personal jurisdiction over COA. If the Court determines that COA has minimum (continuous and systematic) contacts with Arkansas, it then may consider "whether the assertion of jurisdiction would be reasonable and not offend the notions of 'fair play and substantial justice.'" *See Int'l Shoe*, 326 U.S. 310, 316, 66 S. Ct. 154 (1945).

1.  COA's Contacts

First, under the Eighth Circuit's five-factor analysis, the Court examines the nature and quality of COA's contacts with Arkansas. CTQ asserts that COA's Internet contacts are substantial enough that the Court may properly exercise personal jurisdiction over COA. The Eighth Circuit has adopted the *Zippo* sliding scale test as the proper analysis to determine if a defendant's internet contacts are sufficient to establish "minimum contacts." *Lakin*, 348 F.3d at 711 (8th Cir. 2003); *See Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997) (using a "sliding scale" of interactivity to identify internet activity that constitutes purposeful availment). The *Zippo* test is as follows:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with a host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site. (citations omitted)

*Zippo*, 952 F. Supp. at 1124. However, the Eighth Circuit does not "apply the 'sliding scale' presumptively for cases of general jurisdiction." *Lakin*, 348 F.3d at 711. It is important for courts to consider the "'nature and quality' of a Web site and a determination of whether it is 'interactive,' 'does business,' or is merely 'passive.'" *Id*. The *Zippo* test alone is insufficient for a general jurisdiction analysis. *Id*. at 712.

Applying the *Zippo* test, COA's Web site falls under the middle category. COA's Web site[3] contains an overview of highlighted trips and provides links to information about COA,

---

[3] http://www.cabelas.com/cabelas/en/content/community/inthefield/trips/pages/trips-home-content.jsp?cm_re=LeftNav_Other*OutdoorAdv*090208

including COA's phone number and email address, information regarding the procedure for booking a trip, conditions for the trips, and a disclaimer about liability. By clicking on a specific "highlighted trip," one can find out the price, dates, and services that are included in the package. Arkansas consumers can review detailed company and service information as well as exchange email. If a potential hunter contacts COA by clicking on the email link and sending a message, a representative of COA will respond to the email. The information displayed on the site as well as the interactivity provided by email is highly commercial in nature.

The maintenance of COA's Web site, in and of itself, might not be sufficient to sustain personal jurisdiction in Arkansas. However, COA's website is not its only contact with Arkansas. The Web site must be considered alongside COA's other interactions with Arkansas residents. These other interactions include contact with Arkansas residents who booked hunts through COA and COA's advertisements in Arkansas.

In 2006, 20% of the hunters who booked CTQ hunts through COA were residents of Arkansas. COA's sales of CTQ hunts to Arkansas customers constitute a significant portion of its business for these hunts. COA certainly knew that it was doing business with Arkansas customers. Moreover, in 2007, COA and one or more of its divisions sent approximately 1864 catalogs to Arkansas. In 2006, the number of catalogs sent was 2192. COA also has general advertisements in the pages of some catalogs distributed by Cabela's. COA does not disclose the number of these catalogs that Cabela's sent to Arkansas in 2006 and 2007; however, COA states that Cabela's mailed 1.73% of its catalogs to Arkansas during these two years. However, this percentage is irrelevant to a minimum contacts discussion. *See Lakin*, 348 F.3d at 709. The relevant inquiry is not whether the percentage of a company's contacts is substantial for the company; rather, the inquiry should focus on whether the company's contacts are substantial for the forum. *Id.*

The Court now looks to the second factor of the five-factor analysis, which is the quantity of COA's contacts with Arkansas. As noted above, COA's contacts with Arkansas are significant. In 2006, 20% of the hunters who booked CTQ hunts through COA were residents of Arkansas, Moreover, both in 2006 and 2007, COA sent out thousands of catalogs and advertisements for its services to Arkansas residents. After reviewing the nature, quantity, and quality of COA's contacts with Arkansas, the Court believes that COA's Arkansas contacts are not "random, fortuitous, or attenuated" contacts, *Burger King*, 471 U.S. at 475, but rather the result of an effort to advertise its services to Arkansas residents.

The Court will skip the third factor, which is the relation of the cause of action to COA's contacts with Arkansas, because this factor is considered only in a specific jurisdiction analysis. *See Miller*, 528 F.3d at 1091.

### 2. Due Process

Having determined COA's contacts with Arkansas are sufficient to support general jurisdiction, the Court will now decide whether the "assertion of jurisdiction would be reasonable and not offend notions of 'fair play and substantial justice.'" *Lakin*, 348 F.3d at 713 (quoting *Int'l Shoe v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154 (1945)). In making this determination, the Court must consider the burden on COA, the interests of Arkansas[4], and CTQ's interests in obtaining relief. *Lakin*, 348 F.3d at 713 (citing *Asahi Metal Indus. Co., Ltd. v. Superior Ct. of Cal.*, 480 U.S. 102, 113, 107 S. Ct. 1026 (1987)). Further, the Court must consider the interstate judicial system's interest in obtaining the most efficient resolution of controversies, the shared interest of the several states in furthering fundamental substantive social

---

[4]This is the fourth factor of the Eighth Circuit's five-factor analysis for resolving personal jurisdiction inquiries.

policies, *id*. (citing *Asahi*, 480 U.S. at 113), and the convenience of the parties[5], *Dever*, 380 F.3d at 1074.

Arkansas does not have a specific interest in this case. Instead, Arkansas has a general interest in giving companies a forum in which to litigate their contract disputes. Neither CTQ nor COA is an Arkansas corporation. While it might be inconvenient and a burden for COA to have to travel to Arkansas, it does not seem overly burdensome or inconvenient, especially given the current advancements in communication technology as well as today's modern standards and conveniences. CTQ has a strong interest in obtaining relief, and it has chosen this forum to seek that relief. Having considered all of the above factors, including COA's contacts with Arkansas, the Court concludes that asserting jurisdiction over COA is reasonable and would not violate due process. The Court–sitting in Arkansas–does not believe it is reaching out beyond the limits imposed upon it by the concept of federalism. For all these reasons, the Court concludes that it has personal jurisdiction over COA.

## **CONCLUSION**

Upon consideration, the Court finds that COA's Motion to Dismiss should be and hereby is **DENIED**. An order of even date, consistent with this opinion, shall issue.

IT IS SO ORDERED, this 8th day of September, 2008.

    /s/Harry F. Barnes
    Hon. Harry F. Barnes
    United States District Judge

---

[5]This is the fifth factor of the Eighth Circuit's five-factor analysis for resolving personal jurisdiction inquiries.